Laurelton Estates, LLC v Prince (2025 NY Slip Op 05226)

Laurelton Estates, LLC v Prince

2025 NY Slip Op 05226

Decided on October 1, 2025

Appellate Division, Second Department

Wan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 1, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
LILLIAN WAN
PHILLIP HOM, JJ.

2024-00974
 (Index No. 713878/20)

[*1]Laurelton Estates, LLC, appellant, 
v
Diane J. Prince, etc., respondent.

APPEAL by the plaintiff, in an action, inter alia, for the partition and sale of certain real property, from an order of the Supreme Court (Karina E. Alomar, J.), entered November 29, 2023, in Queens County. The order denied the plaintiff's motion to reject a referee's report and for a valuation hearing with respect to the subject property pursuant to RPAPL 993(6) and granted the defendant's cross-motion to confirm the referee's report, to vacate an order of the same court entered March 10, 2021 (Donna-Marie E. Golia, J.), granting the plaintiff's motion for summary judgment on the complaint and for an order of reference, and an order of the same court dated January 10, 2022 (Karina E. Alomar, J.), granting the plaintiff's motion to confirm a prior referee's report and for a judgment of partition and sale of the subject property, and to dismiss the action pursuant to RPAPL 993(5)(f).

Ginsburg & Misk LLP, Queens Village, NY (Christopher Ryan Clarke of counsel), for appellant.
Twyla Carter, Jamaica, NY (Gerard Deenihan of counsel), for respondent.

WAN, J.

OPINION & ORDER
This appeal concerns the Uniform Partition of Heirs Property Act (UPHPA) (RPAPL 993[1]-[13]), which became effective on December 6, 2019. For the reasons that follow, we hold that, under the circumstances presented here, the Supreme Court properly denied the plaintiff's motion to reject a referee's report and for a valuation hearing with respect to the subject property pursuant to RPAPL 993(6) and granted the defendant's cross-motion to confirm the referee's report, to vacate an order of the same court entered March 10, 2021, granting the plaintiff's motion for summary judgment on the complaint and for an order of reference, and an order of the same court dated January 10, 2022, granting the plaintiff's motion to confirm a prior referee's report and for a judgment of partition and sale of the subject property, and to dismiss the action pursuant to RPAPL 993(5)(f), on the ground that the plaintiff failed to negotiate in good faith as required pursuant to RPAPL 993(5)(e).
I. Factual and Procedural History
In August 2020, approximately eight months after the UPHPA became effective, the plaintiff commenced this action, inter alia, for the partition and sale of certain real property located in Queens (hereinafter the property). In its complaint, the plaintiff alleged that in 1970, Winston Bennett and his wife, Gertrude Bennett, became the owners of the property. In 1974, Winston Bennett and Gertrude Bennett were divorced. Thereafter, on April 30, 2009, Winston Bennett died intestate, leaving his son, Winston A. Bennett, as his sole survivor and heir. In August 2019, Winston A. Bennett transferred his 50% interest in the property to Blackstone Real Estate Group, LLC (hereinafter Blackstone), and the plaintiff subsequently purchased Blackstone's 50% interest [*2]in the property for $70,000. Gertrude Bennett died intestate in January 2016, leaving Anthony Jeffers and the defendant as the sole heirs of her estate. In August 2020, the plaintiff purchased Jeffers's 25% interest in the property for $66,000. Based upon the plaintiff's 75% interest in the property and the defendant's 25% interest therein, the plaintiff sought a judgment directing the partition and sale of the property, allocating the proceeds from the prospective sale of the property in accordance with the respective interests of the parties, and declaring that the defendant is responsible for all liens, judgments, and charges that have been or will be levied against the property, together with damages in the amount of $100,000. The complaint was verified by Joseph Makhani, the sole member of the plaintiff.
In September 2020, the defendant interposed an answer generally denying the allegations in the complaint and asserting a counterclaim for damages related to the carrying costs of the property. Notably, none of the pleadings alleged that this action was controlled by the provisions of the UPHPA.
Thereafter, prior to any settlement conferences being held, the plaintiff moved for summary judgment on the complaint and for an order of reference. In an order entered March 10, 2021, the Supreme Court granted the motion "to the extent that it is determined that Plaintiff and Defendant own the [property] as tenants-in-common with Plaintiff owning a seventy-five (75%) percent interest in the [property] and Defendant owning a twenty-five (25%) percent interest in the [property]" and appointed a referee, among other things, to ascertain and report the rights, shares, and interests of the parties with respect to the property. Thereafter, in a report dated September 10, 2021 (hereinafter the first referee's report), the referee determined, after a hearing at which counsel for the plaintiff and for the defendant were present, that the defendant "is liable for her use and occupancy of the [property] and collection of rents in the amount of Two Thousand and 00/100 ($2,000) per month [that being seventy-five percent (75%) of the fair market value of the [property] and/or rents collected] calculated from August 1, 2020, to the date of sale, which amounts shall be deducted against Defendant's share of the ultimate proceeds," and that "Plaintiff is not liable for any repair or maintenance charges inasmuch as Defendant has had full occupancy of the [property]."
In January 2022, the Supreme Court granted the plaintiff's motion to confirm the first referee's report and for a judgment of partition and sale of the property. However, in August 2022, before a judgment was entered, the court directed the parties to participate in a mandatory settlement conference pursuant to RPAPL 993(5). Thereafter, the parties participated in settlement conferences on September 13, 2022, November 15, 2022, December 12, 2022, February 16, 2023, March 23, 2023, May 1, 2023, and May 15, 2023. When the parties were unable to reach a mutually agreeable resolution, the parties were given the opportunity to submit affidavits and briefs concerning the issue of whether the parties negotiated in good faith. On June 14, 2023, both parties submitted papers on this issue.
In a report dated August 23, 2023 (hereinafter the Gordon Report), a referee, Daniel S. Gordon, who conducted the mandatory settlement conferences, concluded that the plaintiff failed to negotiate in good faith as mandated by RPAPL 993(5)(e) and, therefore, recommended that the action be dismissed pursuant to RPAPL 993(5)(f). In addition to the aforementioned factual and procedural history, the Gordon Report noted that the defendant stated in an affidavit that the defendant's mother had purchased the property in 1970, that the defendant had grown up in the property, that the defendant's children had grown up in the property, and that the defendant's son still lived there.
The Gordon Report stated that at the first settlement conference, the parties agreed that this action was governed by RPAPL 993. The plaintiff, however, argued that any entitlement to proceed under RPAPL 993 was waived by the defendant. Nevertheless, the plaintiff participated in the settlement conference process and made and considered multiple settlement offers. At the first settlement conference, the defendant made an offer to purchase the plaintiff's interest in the property for $250,000. This offer was rejected by the plaintiff. At the second settlement conference, the defendant extended the same offer, which again was rejected by the plaintiff. The plaintiff stated that its position was that it was entitled to 75% of the property's market value for its interest therein or that the property should be sold. The plaintiff agreed to submit a counteroffer. The defendant obtained an appraisal of the property. The plaintiff agreed to use the appraisal obtained by the defendant as a benchmark for settlement discussions, but reserved the right to challenge the valuation. The property was appraised at $695,000. Each party also acknowledged that there were unpaid property taxes in the amount of $82,720.94 with respect to the property.
Over the course of multiple settlement conferences, the parties engaged in further settlement discussions and exchanged written offers to purchase each other's interest in the property or, alternatively, to sell to each other their interest therein. The defendant increased her offer to purchase the plaintiff's interest in the property to $300,000, with the plaintiff to pay 75% of the property tax arrears. The defendant's final offer was to purchase the plaintiff's interest in the property for a full $300,000. The plaintiff's final offer was to purchase the defendant's interest in the property for $125,000 or to sell its interest therein to the defendant for $500,000. A final conference was held on May 15, 2023, at which no agreement was reached.
After summarizing the applicable provisions of the UPHPA, the Gordon Report determined that the plaintiff failed to negotiate in good faith. In reaching this conclusion, the Gordon Report stated, inter alia, that:
"The plaintiff did not give due consideration to the equitable factors that under RPAPL 993(5)(c) and (9)(a) were required to be part of the good faith negotiations during the settlement conferences. Plaintiff proceeded in this action only considering the value of the property and the alleged interest owned by each party and proceeded as if this was a regular partition action rather than an action under RPAPL 993. Plaintiff's offer does not take into account the equitable factors outlined in subdivision 9(a), which favor the defendant, including the defendant's sentimental value in the property, the harm that it might cause if she were caused to lose the property, and the degree to which the defendant has contributed to expenses associated with the maintenance and upkeep of the property, and were not considered in the negotiations by the plaintiff. Here, the property was purchased by the [defendant's] mother. The property has been in the [defendant's] family for over fifty years. It is the defendant's family home and her son continues to reside at the premises. Further, the offer did not adequately account for the price, terms and conditions of the acquisition of the plaintiff's share of the property. The plaintiff allegedly purchased its interest in the property for far below the market value of such interests for approximately $136,000 in total."
The Gordon Report further determined that "[o]ther factors also favor a finding that the plaintiff did not act in good faith during the settlement conference process." These factors included "the plaintiff's actions in moving both for an order of reference and to move to confirm the referee's report and to sell the property at auction prior to holding a settlement conference," which "were not proper under RPAPL 993." The Gordon Report also noted that throughout the settlement conference process, the plaintiff
"continued to rely on the report of the referee that the plaintiff was entitled to use and occupancy from the defendant. No such findings should have been made prior to the settlement conference. Not only was the order of reference and motion to confirm the referee's report done prematurely when these motions were considered they were done without regard to RPAPL 993. The plaintiff moved forward with motion practice as if this was a partition action not under RPAPL 993. Thus, the motions were granted without regard to the equitable factors outlined in RPAPL 993."
The Gordon Report reasoned that "trying to use the referee's determination of use and occupancy as part of the settlement offers was done in part so that the defendant would accept the plaintiff's offer without the considerations of the factors enumerated under RPAPL 993."
Accordingly, the Gordon Report concluded that "the totality of the circumstances demonstrates that the plaintiff's conduct did not constitute a meaningful effort at reaching a resolution under the parameters of RPAPL 993." Thus, "the plaintiff failed to negotiate in good faith in this action while the mandatory settlement conferences were held and this action should be dismissed."
The plaintiff moved, among other things, to reject the Gordon Report and for a valuation hearing with respect to the property pursuant to RPAPL 993(6). The plaintiff primarily contended that, contrary to the Gordon Report's findings, the plaintiff negotiated in good faith to settle this matter with the defendant, as evidenced by the plaintiff's offers to either purchase the defendant's interest in the property or to sell its interest therein to the defendant. In support of its motion, the plaintiff submitted an affidavit by Makhani, in which Makhani averred that the plaintiff [*3]"has discharged its obligation to negotiate in good faith by offering to purchase the [defendant's] interest . . . in the [property] having not only offered to buy out her interest for an amount that exceeds the appraised value of her 25% percent interest in the [property] accounting for outstanding liens and judgments and use and occupancy but also extending to [the defendant] a settlement demand that discounts [p]laintiff's interest in the [property] again recognizing the outstanding liens and judgments on the [property] as well as the credits due and owing to [p]laintiff on account of [the defendant]'s exclusive use and occupancy of the [property]." Makhani further averred that "even if the use and occupancy credits owed to [p]laintiff were disregarded, the [p]laintiff's buyout offer to [the defendant] represents eight-five (85%) percent of the total appraised value of [the defendant]'s claimed 25% equity interest in the [property]."
The defendant opposed the motion and cross-moved to confirm the Gordon Report, to vacate the order entered March 10, 2021, and the order dated January 10, 2022, and to dismiss the action pursuant to RPAPL 993(5)(f). The defendant primarily contended that under the totality of the circumstances, the plaintiff's settlement offers were not made in good faith. In an affidavit, the defendant averred, inter alia, that the plaintiff is a "front" for Makhani, who is "a convicted felon having pleaded guilty in Federal Court in 1998 in a case involving deed and tax fraud." Additionally, in 2008, three separate front companies owned by Makhani "pleaded guilty to Falsifying Business Records in the First Degree, a class 'E' felony," in connection with charges alleging that Makhani, "personally or through one of his corporations, forged signatures on deeds filed with the New York City Department of Finance to unlawfully gain control of three properties in Queens from their legal owners." Additionally, in July 2023, Makhani "was arrested and arraigned on Indictment # 73324-23/001 in New York State Supreme Court, New York County, Part 41," in connection with charges alleging that Makhani "stole two Harlem brownstones through deed theft and mortgage fraud."
The defendant further averred that "[d]uring the entire process, Plaintiff continually rejected my offers without any negotiation, insisting on nothing less than 'market value' for its share of the property." The defendant noted that the "Plaintiff continually pointed to [the first referee's report], and the Court's Order to Confirm that Report on January 1[0], 2022, granting Plaintiff $2000/month in rent for use and occupancy of the premises, as to why it had no need to negotiate." Moreover, the defendant noted that "the only 'offers' made by Plaintiff was one 'offer' to sell its share for $600,000 and a subsequent 'offer' to sell for $500,000," each of which "were either at or above [the] market value" of the plaintiff's interest in the property. At the same time, the defendant contended that the offers made by the plaintiff to purchase the defendant's 25% interest in the property "were well below market value." The defendant averred that she
"made clear to Plaintiff that these offers were much too low and did not adequately take into account the sentimental value my family and I have attached to our home, the expenses my family incurred for the maintenance and upkeep of the property, and the harm that would be caused by my family losing our home and my son, in particular, having to move."
Additionally, the defendant "continually made clear that my main goal was always to preserve our family home of over fifty (50) years and that I remained negotiable and invited Plaintiff to make reasonable, good faith counteroffers." The defendant also contended that given Makhani's background, "[t]his partition action and Plaintiff's actions during the Settlement Conference phase have all the hallmarks of the common deed-theft and equity-stripping schemes that are currently plaguing communities of color both in Queens County and New York City overall." Moreover, the defendant noted that her settlement offers "would have netted Plaintiff a significant profit."
II. Order Appealed From
In an order entered November 29, 2023, the Supreme Court denied the plaintiff's motion and granted the defendant's cross-motion upon its determination that the plaintiff failed to negotiate in good faith as mandated by RPAPL 993(5)(e). In pertinent part, the court determined that:
"Considering all the evidence submitted herein by both movants, including the lack of submission of the Judgment of Divorce from the 1974 divorce proceeding of the Bennett's, indicating the outcome of that proceeding and whether an equitable distribution was ever filed; the lack of proof that Winston A. Bennet was Winston [*4]Bennet's sole heir; defendant's allegation concerning the criminal propensity of Joseph Makhani, and his affiliation with Laurelton Estates, LLC in addition to [the Gordon Report], all lead to this court's decision to grant defendant's cross motion and deny plaintiff's motion in its entirety.
"Moreover, considering the totality of the evidence herein, it is evident that plaintiff's conduct did not constitute a meaningful effort at reaching a resolution under RPAPL 993."
The plaintiff appeals.
III. Analysis
"[A] referee's findings and recommendations are advisory only and have no binding effect on the court, which remains the ultimate arbiter of the dispute" (Ocwen Loan Servicing, LLC v Coles, 223 AD3d 678, 680 [internal quotation marks omitted]; see HSBC Bank USA, N.A. v Delgado, 211 AD3d 920, 921; Citimortgage, Inc. v Kidd, 148 AD3d 767, 768). "The report of a referee should be confirmed whenever the findings are substantially supported by the record, and the referee has clearly defined the issues and resolved matters of credibility" (Citimortgage, Inc. v Kidd, 148 AD3d at 768).
Generally, a party who jointly owns property with another may "seek physical partition of the property or partition and sale when he or she no longer wishes to jointly use or own the property" (Manganiello v Lipman, 74 AD3d 667, 668; see RPAPL 901[1]). However, a certain class of partition actions involving what has been classified as "heirs property" was identified by the New York State Legislature as warranting certain protections and procedures that must be followed in those matters by the courts to ward off deed-theft and equity-stripping schemes, resulting in the enactment of the UPHPA under RPAPL 993 et seq., effective as of December 6, 2019 (see L 2019, ch 596; Maspeth Place Corp. v Walcott-Francis, 74 Misc 3d 1204[A], 2022 NY Slip Op 50040[U] [Sup Ct, Bronx County]). As stated in the New York State Senate Introducer's Memorandum in Support (hereinafter Senate Introducer's Memo in Support):
"In recent years, predatory real estate speculators have taken advantage of New York's laws governing partition actions by purchasing a stake in a residential property—usually after a number of family members have inherited the property—and then using that ownership stake to file a partition action to dispossess the family of the property through a forced sale, often for pennies on the dollar relative to the actual value of the property. Lower-and middle-class families are particularly susceptible to these types of schemes, as they often do not engage in the kind of sophisticated estate planning that could prevent predatory partitioning actions" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 596 at 6).
Pursuant to RPAPL 993, property that qualifies as "heirs property" within the meaning of RPAPL 993(2)(e) is subject to the mandates of the UPHPA, which supersedes the general partition statutes, including RPAPL 901 (see id. § 993[3]). Here, there is no dispute that the property qualifies as "heirs property" under the statute (see id. § 993[2][e][i], [ii], [iii], [iv][B]). Moreover, since the UPHPA applies to "partition actions filed on or after the effective date of this section" (id. § 993[3][a]), it is undisputed that the provisions of RPAPL 993 apply here.
Following the commencement of a partition action involving "heirs property," RPAPL 993(5)(a) mandates that the matter shall proceed to a settlement conference, "for the purpose of holding settlement discussions, pertaining to the relative rights and obligations of the parties with respect to the subject property" (see Pachter v 3063 Brighton 8 Props. LLC, 69 Misc 3d 1201[A], 2020 NY Slip Op 51108 [Sup Ct, Kings County]). "At any conference held pursuant to this section, the plaintiffs and the defendants shall appear in person or by counsel, and each party's representative at the conference shall be fully authorized to dispose of the entirety or any portion of the case" (RPAPL 993[5][c]). Notably, "except for motions concerning (i) a determination of the percentage interests, if any, owned by any alleged co-tenant if such interests are in dispute and (ii) compliance with this rule and its implementing rules including applications to extend in the interests of justice any deadlines fixed herein" (RPAPL 993[5][g]), RPAPL 993(5)(g) also authorizes the Supreme Court to hold "[a]ny motions submitted by any party to the action . . . in abeyance while the settlement conference process is ongoing" (see e.g Schvimmer v Schlessinger, 2024 WL 2725620 [Sup Ct, Kings County]; Maspeth Place Corp. v Walcott-Francis, 74 Misc 3d 1204[A], 2022 NY [*5]Slip Op 50040[U], *1).
RPAPL 993(5)(e) further requires that "[b]oth the plaintiff[ ] and defendant[ ] shall negotiate in good faith [during the UPHPA mandated settlement conferences] to reach a mutually agreeable resolution." Notably, "good faith" is not defined in the statute. However, both parties point to the UPHPA's bill jacket, which contains a "REPORT ON LEGISLATION" by various committees of the New York City Bar (see NY City Bar Assn Rep on Legis, Bill Jacket, L 2019, ch 596 at 12). In examining the settlement conference provisions of the UPHPA, the report acknowledged that "[s]tatutorily-mandated mediation does not exist in New York for partition actions" (id. at 17). However, the Report on Legislation noted that New York has already established a "framework to allow for settlement negotiations in the residential foreclosure context under" CPLR 3408, and that RPAPL 993(5) "incorporates a similar mediation provision" (NY City Bar Assn Rep on Legis, Bill Jacket, L 2019, ch 596 at 17-18; see Dan M. Blumenthal, Prac Commentaries, McKinney's Cons Laws of NY, RPAPL 993 ["The UPHA also contains additional service (posting) requirements, court conferencing (akin to the settlement conferences in mortgage foreclosure actions, see CPLR § 3408), and appraisal requirements"]).
Neither the statutory text of the UPHPA nor the Senate Introducer's Memo in Support reference CPLR 3408. At the same time, this Court has held that "[w]hether a party failed to negotiate in good faith within the meaning of CPLR 3408(f) should be determined by considering whether the totality of the circumstances demonstrates that the party's conduct did not constitute a meaningful effort at reaching a resolution" (Deutsche Bank Natl. Trust Co. v Futerman, 232 AD3d 656, 662 [internal quotation marks omitted]). Such consideration also encompasses a party's conduct prior to the commencement of a settlement conference, since "this conduct is relevant in the overall context of the parties' relationship and the negotiations between them" (Wells Fargo Bank, N.A. v Meyers, 108 AD3d 9, 17; see Investors Bank v Brooks, 211 AD3d 921, 924).
RPAPL 993(5)(e) additionally instructs the parties to negotiate in good faith to reach a mutually agreeable resolution:
"including, but not limited to, a tenancy in common agreement, a co-tenant buyout and the allocation, mechanics and financing thereof as provided in subdivision seven of this section, a partition in kind as provided in subdivisions eight and nine of this section, an open market sale as provided in subdivision ten of this section, or any other agreement or loss mitigation that is fair and reasonable considering the totality of factors listed in paragraph (a) of subdivision nine of this section."
Under RPAPL 993(9)(a), the court, in determining under RPAPL 993(8) whether partition in kind would result in great manifest prejudice to co-tenants as a group, "shall consider the following" equitable factors, including, among others:
"(iii) evidence of the collective duration of ownership or possession of the property by a co-tenant and one or more predecessors in title or predecessors in possession to the co-tenant who are or were relatives of the co-tenant or each other;
(iv) a co-tenant's sentimental attachment to the property, including any attachment arising because the property has ancestral or other unique or special value to the co-tenant;
(v) the lawful use being made of the property by a resident or other co-tenant and the degree to which any such co-tenant would be harmed if the co-tenant could not continue the same use of the property;
(vi) the degree to which the co-tenants have contributed their pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the property or have contributed to the physical improvement, maintenance, or upkeep of the property;
(vii) the price, terms and conditions of the acquisition of the co-tenant's interest in the property . . . ; and
(viii) any other relevant factor." RPAPL [*6]993(9)(b) additionally provides that "[t]he court shall not consider any one factor in paragraph (a) of this subdivision to be dispositive without weighing the totality of all relevant factors and circumstances."
RPAPL 993(5)(f) also provides that
'"[i]f the parties do not reach a mutually agreeable resolution, the referee, judicial hearing officer, or other staff designated by the court to oversee the settlement conference process shall make a report of findings of fact, conclusions of law and recommendations for relief to the court concerning any party's failure to negotiate in good faith pursuant to paragraph (e) of this subdivision."
Importantly, "[i]f the court determines a plaintiff has failed to negotiate in good faith, the partition action shall be dismissed" (id. [emphasis added]).
The plaintiff first contends that, in the Gordon Report, the referee incorrectly based his analysis of whether the plaintiff negotiated in good faith on whether the plaintiff, in fashioning its settlement offers, had considered the equitable factors laid out in RPAPL 993(9). In the plaintiff's view, "the aforementioned equitable factors in subdivision (9) are meant as guideposts for fashioning an equitable resolution of the partition action—they are not standards by which a court referee determines the good faith nature of the settlement negotiations themselves." Instead, the plaintiff contends, "these equitable factors are guidance for the court when fashioning a partition remedy solely when examining a remedy or resolution that falls outside of the typical co-tenant buyout."
Initially, we note that the plaintiff has raised this contention for the first time on appeal (see e.g. State of N.Y. Mtge. Agency v Costanza, 215 AD3d 990, 991). Moreover, we note that the plaintiff has not cited any authority to support this contention. In any event, we are satisfied that both the plain language of RPAPL 993 and the purpose behind the enactment of the UPHPA firmly establish that a determination of whether the parties negotiated in "good faith" under RPAPL 993(5)(e), which requires an assessment of the totality of the circumstances, should include an assessment as to whether the parties considered the equitable factors set forth in RPAPL 993(9) during their settlement negotiations (see id. § 993[5][e], [f]).
The plaintiff next contends that in the context of settlement negotiations under RPAPL 993(5)(e), "the Court should adopt the same good faith standards developed in the foreclosure context . . . when analyzing the good faith of a party negotiating under the UPHPA." According to the plaintiff, the proper standard is whether a "party participate[d] meaningfully in the conferences by someone with settlement authority." There are several problems with this approach. Initially, as the decisional law cited by the plaintiff indicates, "[g]ood faith is an elusive idea, taking on different meanings and emphases as we move from one context to another" (In re: Hosking, 2016 WL 128209, *3, 2016 US Dist LEXIS 3492, *9 [SD NY, No. 15 CV 3999 (VB)] [internal quotation marks omitted]). Here, then, the context of a mandatory settlement conference in a residential foreclosure action is distinct from the instant context. Importantly, where a court determines in the foreclosure context that a plaintiff failed to negotiate in good faith, CPLR 3408(j) indicates that "the court shall, at a minimum, toll the accumulation and collection of interest, costs, and fees during any undue delay caused by the plaintiff, and where appropriate, the court may also impose one or more of the following" conditions. The conditions include compelling production of certain documents (see id. § 3408[j][1]), imposing a civil penalty (see id. § 3408[j][2]), awarding actual damages and/or fees (see id. § 3408[j][3]), or awarding "any other relief that the court deems just and proper" (id. § 3408[j][4]). Notably, dismissal of the action is not an enumerated condition for the failure to negotiate in good faith under CPLR 3408(j). However, in the context of settlement negotiations pursuant to RPAPL 993(5)(f), "[i]f the court determines a plaintiff has failed to negotiate in good faith, the partition action shall be dismissed" (emphasis added).
Additionally, under CPLR 3408(f), whether the parties have negotiated in good faith "shall be measured by the totality of the circumstances," which includes, but is not limited to, whether the parties have complied "with the requirements of this rule and applicable court rules, court orders, and directives by the court or its designee pertaining to the settlement conference process" (id. § 3408[f][1]), whether the parties have complied "with applicable mortgage servicing laws, rules, regulations, investor directives, and loss mitigation standards or options concerning loan modifications, short sales, and deeds in lieu of foreclosure" (id. § 3408[f][2]), and whether the parties engaged in
"[c]onduct consistent with efforts to reach a mutually agreeable resolution, including [*7]but not limited to, avoiding unreasonable delay, appearing at the settlement conference with authority to fully dispose of the case, avoiding prosecution of foreclosure proceedings while loss mitigation applications are pending, and providing accurate information to the court and parties" (id. § 3408[f][3]).
By contrast, under RPAPL 993(5)(e), the parties must negotiate in good faith to reach a mutually agreeable resolution considering, among other things, the equitable factors listed in RPAPL 993(9). These differences in the contexts between the mandatory settlement conferences in residential foreclosure actions and in partition actions concerning heirs property, which are apparent on the face of CPLR 3408 and RPAPL 993, support the conclusion that when considering whether a party negotiated in good faith under RPAPL 993(5)(e), a court should consider whether the party's conduct demonstrates that the party considered "the totality of factors listed in" RPAPL 993(9)(a).
Here, then, upon an examination of the totality of the circumstances, the Gordon Report's determination that the plaintiff failed to negotiate in good faith under RPAPL 993(5)(e) is substantially supported by the record. The referee was present for each settlement conference and, therefore, was able to observe the conduct of the parties throughout the proceedings and to evaluate their credibility. It should further be noted that the plaintiff contends, and the defendant does not dispute, that the plaintiff attended all settlement conferences through counsel with settlement authority, did not attempt to defraud or "take unconscionable advantage of" the defendant, and extended the defendant "every courtesy," including allowing the defendant time to acquire an appraisal of the property, agreeing to use the defendant's valuation of the property for negotiation purposes, and affording the defendant "any time that she ha[d] requested throughout the conference process to formulate her settlement position."
At the same time, however, the plaintiff's arguments concerning the reasonableness of its final settlement offers demonstrate the plaintiff's lack of good faith in the settlement conference process. Notably, the plaintiff provided a detailed breakdown of how it arrived at its final settlement offers, identifying the agreed-upon appraised value of the property of $695,000, the parties' respective interests in the property, the amount of outstanding liens on the property, and the amount of use and occupancy awarded by the Supreme Court in the first referee's report, and how its offers to purchase the defendant's interest in the property or to have the defendant purchase its interest in the property were fair and reasonable given these additional factors.
Despite this detailed analysis, at no point did the plaintiff indicate that it considered the equitable factors set forth in RPAPL 993(9)(a) in making its final settlement offers. Importantly, as the defendant contends, the equitable factors set forth in RPAPL 993(9)(a) strongly favored her position that she was primarily interested in reaching an agreement that would allow her to maintain her ownership interest in the property. As the Gordon Report found, the defendant's mother had purchased the property in 1970, approximately 50 years before the plaintiff acquired its interest in the property and commenced this action. Moreover, the defendant had grown up in the property, her children had grown up there, and her son still lived there (see id. § 993[9][a][iii], [iv], [v]). Additionally, the plaintiff, who is not a relative of either person from whom it purchased its 75% interest in the property (see id. § 993[9][a][viii]), allegedly purchased that interest for $136,000. Despite purchasing its interest in the property for approximately one quarter of the appraised value of that interest of $521,250, the plaintiff made a final offer to sell its interest in the property for $500,000, which would afford the plaintiff a significant profit even accounting for any award of use and occupancy. Thus, as determined in the Gordon Report, the record substantially supports the conclusion that the plaintiff's offers "did not adequately account for the price, terms and conditions of the acquisition of the plaintiff's share of the property" (see id. § 993[9][a][vii]).
Additionally, as the Gordon Report concluded, the plaintiff's reliance during the settlement conference process upon the award of use and occupancy obtained through its pre-settlement conference motion practice further demonstrated the plaintiff's lack of good faith. As the plaintiff points out, it is true that the Supreme Court is not mandated to hold motions "in abeyance while the settlement conference process [pursuant to RPAPL 993(5)] is ongoing" (id. § 993[5][g]). It is also true that "motions concerning . . . a determination of the percentage interests, if any, owned by any alleged co-tenant if such interests are in dispute" are exempted from the court's discretionary ability to hold motions in abeyance during the settlement conference process (id.). At the same time, considering that the court is required to hold settlement conferences within 60 days after a request for judicial intervention is filed (see id. § 993[5][a]), the plaintiff's pre-settlement motion practice [*8]appears calculated to gain an advantage over the defendant in any settlement negotiations concerning the sale of the property. While it is true that none of the pleadings referenced the UPHPA and the court did not direct that a settlement conference be held prior to deciding the plaintiff's pre-settlement conference motions, the plaintiff does not contend that it was unaware of the enactment of the UPHPA or that the UPHPA does not apply to this action. Instead, the allegations in the complaint make it clear that the UPHPA governs this action (see id. § 993[2][e]). Moreover, as noted in the Gordon Report, during the first settlement conference, the plaintiff did not contend that the UPHPA did not apply to this action. Instead, the parties agreed that the UPHPA applied herein. The plaintiff's only contention as to the application of the UPHPA was that the defendant waived her entitlement to proceed under the UPHPA by failing to raise it in her answer. Notably, the referee found this contention to be without merit, and the plaintiff did not raise it again in its motion, inter alia, to reject the Gordon Report or on appeal.
Since the Gordon Report's conclusion that the plaintiff failed to negotiate in good faith within the meaning of RPAPL 993(5)(e) was substantially supported by the record, the Supreme Court properly denied the plaintiff's motion to reject the Gordon Report and for a valuation hearing with respect to the property pursuant to RPAPL 993(6) and granted the defendant's cross-motion to confirm the Gordon Report, to vacate the order entered March 10, 2021, and the order dated January 10, 2022, and to dismiss the action pursuant to RPAPL 993(5)(f).
Accordingly, the order entered November 29, 2023, is affirmed.
CHAMBERS, J.P., MILLER and HOM, JJ., concur.
ORDERED that the order entered November 29, 2023, is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court